# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

STEVEN E. FRADDOSIO,

        Plaintiff,

v.                                                     Civil Action No. 3:10-CV-87
                                                     (BAILEY)

PROCTOR FINANCIAL, INC., and
CLAIM ADJUSTMENT SPECIALISTS, INC.,

        Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is Defendants Proctor Financial, Inc.'s and Claim Adjustment Specialists'[1] Motion for Summary Judgment [Doc. 47], filed July 8, 2011. The plaintiff responded on July 25, 2011 [Doc. 52], and the defendants replied on August 3, 2011 [Doc. 54]. This Court has reviewed the record and the motion and, for the reasons set out below, finds that the defendants' motion should be **GRANTED**.

## BACKGROUND

**I.    Undisputed Material Facts**

On August 28, 2008, Lexington Insurance Company ("Lexington") issued a force-placed homeowner's insurance policy on the plaintiff's home located in Berkeley County, West Virginia. The policy was issued to the plaintiff's lender, the United States Department of Agriculture (the "USDA"), after the plaintiff failed to secure homeowner's insurance. The policy at issue ran from September 1, 2008, to September 1, 2009.

---

[1]In the Notice of Removal [Doc. 2], Claim Adjustment Specialists claims it was incorrectly named as "Claim Adjustment Specialists, Inc."

1

On August 3, 2009, the plaintiff's home was damaged by fire. After conducting an investigation of the claim, Proctor Financial, Inc. ("Proctor") made full payment to USDA and settled the claim. The plaintiff retained counsel in an attempt to obtain coverage for the loss. By letter dated September 3, 2009, Proctor notified the plaintiff that he was not an insured under the policy.

## II.     Procedural History

On August 2, 2010, the plaintiff filed suit in the Circuit Court of Berkeley County, West Virginia, against Proctor, the broker that sold the policy, and Claim Adjustment Specialists ("CAS"), the claims adjusting entity that adjusted the claim. The Complaint [Doc. 2-1] contains four counts: (Count I) breach of contract, (Count II) violations of West Virginia's Unfair Trade Practices Act ("WVUTPA"), W.Va. Code § 33-11-4(9) (Count III) breach of the implied covenant of good faith and fair dealing, and (Count IV) punitive damages. On September 17, 2010, the defendants removed this case to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 2]. On September 24, 2010, the defendants filed a timely Answer [Doc. 5] to the Complaint.

On April 21, 2011, the defendants moved for summary judgment on Count I (Breach of Contract) and Count III (Breach of Implied Covenant of Good Faith and Fair Dealing) [Doc. 30]. In support of their motion, the defendants argued that both claims failed as a matter of law because, *inter alia*, Lexington is the insurer, not the defendants. On June 8, 2011, this Court agreed and granted summary judgment on Counts I and III [Doc. 45].

A month later, on July 8, 2011, the defendants filed the instant Motion for Summary

Judgment [Doc. 47],[2] arguing that they are entitled to summary judgment on Count II (WVUTPA) and Count IV (Punitive Damages). The defendants state two bases in support of their motion: (1) the USDA is the insured under the homeowner's policy, not the plaintiff; and (2) West Virginia has abrogated third-party claims pursuant to the WVUTPA.

On July 25, 2011, the plaintiff filed his Response [Doc. 52] in opposition to the defendant's motion. Specifically, the plaintiff argues that he is an insured under the homeowner's policy because he paid the premiums and owned the property and because certain provisions in the policy raise doubt as to whether the parties intended that he have the status of an insured.

On August 3, 2011, the defendants filed a Reply [Doc. 54], reiterating and supplementing their previous arguments in support of summary judgment.

## **DISCUSSION**

I. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining

---

[2]Contemporaneously, the defendants filed a Motion to Stay [Doc. 49] discovery until after the Court has ruled on the instant motion for summary judgment. To the extent that this Order rules on the motion for summary judgment, this Court hereby **DENIES AS MOOT** the motion to stay **[Doc. 49]**.

3

whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

## II. <u>Analysis</u>

In their motion, the defendants argue that they are entitled to summary judgment on Count II (WVUTPA) and Count IV (Punitive Damages), while the plaintiff argues that he has presented genuine issues of material fact which preclude summary judgment on either count. Below, the Court will consider each count, in turn.

### A. Count II: WVUTPA

In Count II, the plaintiff alleges that the defendants violated the WVUTPA by participating in unfair claim settlement practices prohibited by W.Va. Code § 33-11-4(9). ([Doc. 2-1] at ¶¶ 50-52). In the instant motion, the defendants argue that they are entitled to summary judgment on Count II because as a third-party claimant, the plaintiff has no claim pursuant to the WVUTPA. For the reasons that follow, this Court agrees.

4

### 1. WVUTPA

West Virginia Code § 33-11-4a provides, as relevant here, that:

(a) A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice. A third-party claimant's sole remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the commissioner in accordance with subsection (b) of this section. A third-party claimant may not include allegations of unfair claims settlement practices in any underlying litigation against an insured.

W.Va. Code § 33-114a(a); *see also* **Southern West Va. Paving, Inc. v. Elmo Greer & Sons, LLC**, 691 F.Supp.2d 677, 679-80 (S.D.W.Va. 2009) (third-party claimant under W.Va. Code § 33-11-4a was precluded from suing an insurance company for statutory unfair claims settlement practices and common law bad faith).

Clearly, therefore, unless the plaintiff is an insured under the force-placed homeowner's insurance policy at issue, then his WVUTPA claim fails as a matter of law.

### 2. Force-Placed Homeowner's Insurance Policy

The plaintiff does not dispute the following concerning the force-placed homeowner's insurance policy: (1) the USDA is listed as the named insured on the declarations page of the policy; (2) the first page of the policy states that "[t]hroughout the policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations;" (3) and that the policy defines the agreement as, "We will provide the insurance described in this policy to you in return for the premium and compliance with all applicable provisions of the policy." Nevertheless, the plaintiff argues that he has presented a genuine issue of material fact that he is an insured under the policy based upon his payment of the premium, his ownership of the property, and certain provisions of the policy he claims are ambiguous on the issue of whether he is an insured. The Court will now consider these arguments, in

turn.

### i. Payment of Premium/Ownership of Property

Independent of his claims of ambiguity, the plaintiff appears to argue that his payment of the premium and ownership of the property automatically grant him insured status, as a matter of law. This Court finds the plaintiff's argument unpersuasive and legally inaccurate.

It is well-settled that "[a]s the mortgagor and mortgagee each has an insurable interest in the mortgaged property, insurance taken by one on his or her own interest and in his or her own favor alone does not inure to the benefit of the other." 46A C.J.S. INSURANCE § 1938; *see also* **Farmers' & Laborer's Co-op. Ins. Ass'n v. Bank of Centralia**, 227 Mo. App. 1068, 56 S.W.2d 606 (Mo. Ct. App. 1933); **John Weis, Inc. v. Reed**, 22 Tenn. App. 90, 118 S.W.2d 677 (Tenn. App. 1938). Similarly long-established is that "[t]he mortgagor has no right to proceeds of a policy insuring the mortgagee's interest only, even though the mortgagee had charged the mortgagor with the premium . . .." 46A C.J.S. Insurance § 1938; *see also* **Lockett v. Western Assur. Co.**, 190 Ark. 1135, 83 S.W.2d 65 (1935). Finally, "even though a person owns a property insured by another, ownership of the property does not automatically grant the owner an interest in the insurance policy." **Mergenthal v. Star Banc Corp.**, 122 Ohio App. 3d 100, 104, 701 N.E.2d 383, 385 (Ohio Ct. App. 1997).

In the instant case, the undisputed facts show that the USDA (mortgagee) contracted with Lexington to insure its interest in the mortgaged property and charged the plaintiff (mortgagor) with the premium. Pursuant to the above-outlined law, therefore, the USDA's interest was insured and, despite the plaintiff being charged the premium, only the

USDA is entitled to the proceeds of the policy. As such, the plaintiff's payment of the premium and ownership of the property do not, as a matter of law, elevate him to the status of an insured. Accordingly, unless the plaintiff can persuade this Court that the policy itself contains ambiguities concerning whether he is an insured thereunder, the plaintiff's WVUTPA claim fails as a matter of law

### ii.    Claimed Ambiguities in Policy

The plaintiff argues that ambiguities contained in six provisions of the policy at issue support his claim that he is an insured along with the USDA. The Court now considers each claim of ambiguity, in turn.

### a.    Payment of Premium

On the first page of the policy, the "Agreement" is described as follows: "We will provide the insurance described in this policy to you *in return for the premium* . . .." ([Doc. 30-1] at 7) (emphasis added). The plaintiff claims that there is an ambiguity in this provision because he, not the USDA, paid for the premium. This Court disagrees.

First, as explained above, there is no legal impropriety in a mortgagee charging an insurance premium to its mortgagor. Second, the challenged provision is silent on who is required to pay the premium, stating only that the insurance would be provided "in return for the premium." For these reasons, the Court finds no ambiguity in this provision.

### b.    Ownership of Property

Under the heading of "Policy Conditions and Definitions," the policy provides as follows: In consideration of the premium charged we will . . . insure . . . the Lending Institution . . . against direct physical loss resulting from destruction of or damage to *your property* . . .. ([Doc. 30-1] at 7) (emphasis added). The plaintiff claims that this provision

is ambiguous because he, not the USDA, owns the property.

As stated above, a mortgagee may rightfully insure its security interest in property owned by the mortgagor. The phrase "your property" merely reflects the USDA's security interest in the property owned by the plaintiff. As such, the Court finds no ambiguity in this provision.

### c. Subrogation

With regard to subrogation, the policy provides as follows: "In the event we make any payment under this policy, we will be subrogated to the extent of such payment of all your rights *and those of the "Borrower"* against any party who may be legally liable for causing the damage . . .." ([Doc. 30-1] at 8) (emphasis added). Because under this provision the insurer is subrogated to the plaintiff's right against any party liable for causing damage to the property, the plaintiff argues that ambiguity arises as to whether he is an insured under the policy. This Court disagrees.

First, this provision is not ambiguous as to what it provides: the insurer is subrogated to the rights of the mortgagor. Moreover, the plaintiff has cited no authority, and the Court is aware of none, which supports the proposition that a mortgagor automatically becomes an insured if the insurance contract, under which he is not a named insured, provides that the insurer is subrogated to the mortgagor's rights. Accordingly, the Court finds no ambiguity in this provision.

### d. Application Form

The policy provides that "[t]he application form, once completed and signed by [the USDA], is made a part of and is attached to this policy contract." ([Doc. 30-1] at 9). Based upon this provision, the plaintiff argues that "[t]he Application referred to within the

8

insurance policy and that is part of the insurance policy may lend additional evidence in support of the fact that [he] is an insured under the policy." ([Doc. 53] at 6). This Court disagrees.

First, Defendant Proctor has submitted an affidavit in support of summary judgment stating that Proctor, as the broker for Lexington, has no other documents "related to the insurance policy in question which indicate in any way that [the plaintiff] is an insured under that policy, including but not limited to, an application referred to on pg 3 of the insurance policy issued by [Lexington] to the [USDA] . . .." ([Doc. 43-1] at ¶ 4). Second, the plaintiff has failed to rebut the defendants' argument that the USDA uses a bidding, not an application, process to procure insurance. Finally, to the extent the plaintiff is claiming a need for further discovery concerning the existence of an application, this Court finds that he has failed to comply with the requirement contained in Rule 56(d) of the Federal Rules of Civil Procedure that such claim be supported by an affidavit. See Fed. R. Civ. P. 56(d). For all these reasons, the Court finds no ambiguity in this provision.

### e. Dual Interest

The clause titled "Duties in the Event of Loss or Damage" provides, in relevant part, as follows: "In the event of a dual interest, any mortgagor claiming coverage or monetary benefit under this insurance will agree to submit to an examination under oath at such times as may be reasonably required by us . . . ." ([Doc. 30-1] at 10). The plaintiff argues that reference to "a dual interest" supports his claim that he is an insured under the policy. This Court disagrees.

As correctly recognized by the defendants, "the policy provision cited by Plaintiff does not state that there are dual interests in the insurance policy, but that 'in the event of

9

[a] dual interest' certain conditions apply." ([Doc. 47] at 9). As such, the Court finds no ambiguity in this provision.

### f. Insurance Invalidation

The clause titled "Mortgage Clause" states, in pertinent part, as follows: "This insurance, as to the interest of the mortgagee (or trustee) *only*, will not be invalidated by any act or neglect of the *mortgagor or owner of the property* . . .." ([Doc. 30-1] at 11) (emphasis added). The plaintiff argues that "inclusion . . . of the word 'only' supports the conclusion that the insurer acknowledges that the mortgagor . . . is an insured" whose interest would be invalidated for committing an act causing damage to the property. ([Doc. 53] at 8). This Court disagrees.

Instead, this Court agrees with the defendants' explanation that "the reason for allowing coverage even if there is negligence on behalf of the property owner/mortgagor is because the policy is intended to protect the mortgagee's interest in the property regardless of any actions of the mortgagor." ([Doc. 48] at 10). Accordingly, the Court finds no ambiguity in this provision.

In sum, the plaintiff has failed to present a genuine issue of material fact, or establish as a matter of law, that he is an insured under the policy. As explained above, neither the plaintiff's payment of the premiums nor his ownership of the property grants him that status as a matter of law. Moreover, the plaintiff has failed to persuade this Court that ambiguities exist in the policy that support his argument that he is an insured. Therefore, because West Virginia has abrogated third-party claims under the WVUTPA, the plaintiff's claim thereunder fails as a matter of law. Accordingly, Count II (WVUTPA) should be **DISMISSED**.

### B. Count IV: Punitive Damages

In light of the ruling above, the plaintiff's claim for punitive damages is unsupported by any substantive claim of wrongdoing, and therefore, fails as a matter of law. Accordingly, Count IV (Punitive Damages) should be **DISMISSED**.

### CONCLUSION

For the foregoing reasons, the Court finds that the defendants' Motions for Summary Judgment **[Doc. 47]** should be, and hereby are, **GRANTED**. Accordingly, the plaintiff's Complaint **[Doc. 2-1]** is **ORDERED DISMISSED WITH PREJUDICE**, and the above-styled action is **ORDERED STRICKEN** from the active docket of this Court. Finally, the Clerk is hereby **DIRECTED** to enter judgment in favor of the defendants in accordance with this Order and this Court's June 8, 2011, Order Granting Defendants' Motion for Partial Summary Judgment **[Doc. 45]**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: August 30, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE